NOT DESIGNATED FOR PUBLICATION

No. 114,423
No. 114,434

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TAMMY A. ROBERTS a/k/a TAMMY A. WRIGHT,
*Appellee*,

v.

DANIEL WEAVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed February 3, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Clifford L. Bertholf*, of Wichita, for appellant.

*William A. Vickery*, of Wichita, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: When the English Restoration playwright William Congreve penned the lines, "Heaven has no rage like love to hatred turned, nor hell a fury like a woman scorned," he presaged the conflict now before us but with the genders reversed. This appeal arises out a chain of events that are well known to the parties and need not be recounted in full here. It suffices to say that these events resulted in two cases involving Tammy Roberts and Daniel Weaver, which were consolidated in the district court.

Tammy lived in St. Louis, Missouri, and Daniel lived in Illinois. During the time their relationship was flourishing, Tammy bought a new car and Daniel graciously

1

arranged for the car to be included on his auto liability policy in order to save insurance costs for Tammy. In order to do so, Daniel's name was added to the title of Tammy's car. Tammy paid the down payment on the car and all the payments on the car loan. She was the sole obligor on the promissory note to the lender on the auto loan. There was an increased premium on Daniel's auto policy for adding Tammy's car to his policy, but Tammy ultimately reimbursed Daniel for the added expense.

Tammy moved into Daniel's house in Illinois and, at Daniel's suggestion, placed her furnishings and appliances in Daniel's storage unit. After a few months the relationship took a turn in a decidedly southern direction, and Tammy moved out and came to Kansas. Tammy bought her own auto insurance policy for her car and asked Daniel to agree to have his name taken off the car title. He refused.

When Tammy left Illinois, Daniel moved her personal effects and placed them in his storage unit in Illinois. He filed a small claims action in Illinois against Tammy for the storage expense and made harassing phone calls to Tammy, her employer, and her family and friends about her failure to pay the storage bill. Tammy later paid off the Illinois judgment for this expense, and she received some of her property back.

When Daniel came to Wichita to return some of Tammy's property, he discovered that Tammy had a new boyfriend. He responded by taking Tammy's car and towing it back to Illinois. Among other things, he sent about 100 emails to Tammy and about 400 emails to her new boyfriend making demands for money from Tammy in exchange for the car and her personal belongings.

This is when Tammy filed the current Protection from Abuse (PFA) action against Daniel and obtained temporary restraining orders. In spite of those orders, Daniel made threatening calls to Tammy's auto insurance company and continued to make repeated daily phone calls to Tammy's employer, her coworkers, her boyfriend, and her family

2

with accusations about what a horrible person Tammy was. Daniel told Tammy that he would destroy Tammy and her relationship with her new boyfriend.

Tammy then filed an action to quiet the title to her automobile. These were the actions consolidated for trial and in this appeal. At trial, Tammy testified to her fear of Daniel, noting that Daniel owns guns and is "a loose cannon." She testified that Daniel had displayed weapons on an occasion when he was angry at others, and the police were called to attempt to control him. According to Tammy, placing Daniel's name on the car title was only to accommodate getting cheaper insurance for her car, and she never intended for him to have an ownership interest in the car.

The district court quieted the title to Tammy's car and directed the Kansas Department of Revenue to issue a new titled listing Tammy as the sole owner. (That change in the car title has since occurred.) With respect to Tammy's PFA action, the district court ruled that the evidence did not support a PFA order, but it found that there was evidence presented to support a Protection from Stalking (PFS) order, which the court entered. Daniel was ordered to return Tammy's car and personal property, and the court imposed a $100 per day sanction for any delays in Daniel doing so. Following unsuccessful posttrial motions, these consolidated appeals followed.

We have been told that Tammy's car has since been returned to her, albeit in the Kansas City area rather than Wichita as ordered, and with significant damage to the car, which Tammy claims was caused by Daniel. Apparently, Tammy's personal property has not been returned to her, and we are told that there are contempt proceedings pending on these matters to be resolved once this appeal is decided.

*Jurisdiction*

As a preliminary matter, Tammy claims that because of the contempt proceedings still pending in the district court these are not appeals from final judgments. Thus, we first must consider whether we have jurisdiction to consider these appeals. Jurisdiction is an issue of law over which we have unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

While there are outstanding contempt orders, the orders entered in both of these cases were final orders under K.S.A. 2015 Supp. 60-2102(a). The district court granted Tammy's motion for sanctions under K.S.A. 2015 Supp. 60-211 and imposed sanctions against Daniel. Tammy filed a second motion for damages and sanctions, but it was filed after the notices of appeal were filed. While the district court did not have the authority to proceed on Tammy's second sanctions motion while these appeals are pending, the pendency of that second sanctions motion does not deprive us of jurisdiction over these appeals.

*Quiet Title Action—Due Process*

Daniel claims he was denied due process in the quiet title action because he was not given notice of the theory upon which Tammy sought to have his name removed from the car's title certificate. Procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Whether Daniel was afforded due process is a question of law which we review de novo. *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 81, 209 P.3d 200 (2009).

Daniel did not make a specific due process argument at trial. But in his motion to amend judgment or for a new trial, Daniel asserted that he "had no notice of a reason to take away his property interest" and he had "no notice that his intent to own or his lack of

4

equitable ownership were in issue in this matter." He claims that if he had known that his equitable ownership were issues in the matter, he could have presented evidence at trial. Daniel further claimed that Tammy's petition made no reference to equitable principles. But a quiet title action is equitable in nature, and a trial court may render equitable relief justified by the evidence. See *Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 665-66, 574 P.2d 217 (1977). See also 60-1002(a).

Tammy's petition clearly stated that she was seeking an order quieting title in her name. The petition also noted that she had paid all of the loan payments, maintenance, insurance, and upkeep on the vehicle since it was purchased. She stated that Daniel made no financial contribution to the vehicle. Daniel complains that he was blindsided by Tammy's legal theory to quiet title, but her theory was stated in the petition.

It is clear that Daniel understood the nature of the action. His testimony was specifically directed to counter Tammy's allegations. Daniel was given notice and an opportunity to be heard at a meaningful time and in a meaningful manner and was not blindsided by Tammy's theory of recovery. Thus, we are not convinced by his due process argument.

*Quiet Title Action—Sufficiency of the Evidence*

Daniel claims there was insufficient evidence to support the district court's conclusion that he did not have equitable title in the vehicle. Here, Tammy had the burden of providing clear and convincing evidence that she was entitled to relief on this claim. See *Crone v. Nuss*, 46 Kan. App. 2d 436, 442, 263 P.3d 809 (2011). Clear and convincing evidence is evidence "sufficient to establish that the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 286 Kan. 686, 696, 187 P.3d 594 (2008). In our review we apply that same standard to determine the sufficiency of the evidence. In doing so, we do not reweigh conflicting evidence, pass on the credibility of witnesses, or

5

redetermine questions of fact. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010).

Daniel did not dispute that Tammy paid for the vehicle, was the only one liable for repayment on the promissory note, and was the sole driver of the vehicle. Daniel did not claim that he contributed to any of the car payments. He admitted that he was added to the title so that Tammy could obtain cheaper insurance. The sole financial dispute concerning the acquisition and maintenance of the vehicle was whether Tammy reimbursed Daniel for the added insurance premium. Daniel never asserted possession or ownership of the car until he became aware of Tammy's new boyfriend during his visit to Wichita. He claimed that he took the car as security for other debts that Tammy allegedly owed to him, not because of his ownership interest. Based on this evidence we are satisfied there was sufficient clear and convincing evidence to support Tammy's claim and the district court's judgment.

But Daniel claims that the district court's finding that he made a de minimis contribution to the vehicle contradicted its ruling that title should be quieted in Tammy's favor. In its original order, the district court found that Daniel "made no contribution whatsoever." But the order was modified to reflect a "de [minimis]" contribution. Daniel asserts that he contributed by cleaning up Tammy' trade-in vehicle and by obtaining and paying for the insurance. Daniel claims the district court's finding discredits its ruling because a mere inadequacy of consideration is not enough by itself to warrant equitable action. See *Browning v. Blair*, 169 Kan. 139, 148, 218 P.2d 233 (1950). But this case was not about the adequacy of consideration. Rather, as previously discussed, the district court found that Daniel's name was placed on the title for the sole purpose of helping Tammy obtain cheaper insurance, for which Tammy ultimately paid the extra premium. The district court's finding does not vitiate the finding of clear and convincing evidence that supports this judgment.

6

*Due Process—Converting PFA to PFS*

Daniel claims that the district court violated his due process rights by converting Tammy's PFA petition into a PFA action and a PFS order.

PFA and PFS actions are to be liberally construed in order to protect victims of abuse or stalking. See K.S.A. 60-3101(b); K.S.A. 60-31a01(b). The elements of either action must be proved by a preponderance of the evidence. K.S.A. 2015 Supp. 60-3106(a); K.S.A. 2015 Supp. 60-31a05(a). Here, after all evidence was presented, the district court concluded that the elements had not been met to justify entry of a PFA order, but that the evidence did meet the elements of a PFS order. Thus, the district court chose to *sua sponte* change the nature of the order requested. Daniel claims that this action foreclosed his ability to present evidence to rebut the facts necessary to support a PFS order and thereby denied him due process.

Under the PFA Act, one who meets certain conditions may seek relief by filing a verified petition alleging abuse. K.S.A. 2015 Supp. 60-3104(a) and (b). Abuse is defined as the occurrence of one or more of the following acts: (1) intentionally attempting to cause bodily injury or intentionally or recklessly causing bodily injury; or (2) intentionally placing, by physical threat, another in fear of imminent bodily injury. K.S.A. 60-3102(a).

The Act requires the district court to conduct a hearing at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. K.S.A. 2015 Supp. 60-3106(a). But here, the district court found there was insufficient evidence of abuse but sufficient evidence of stalking. The PFS Act has specific pleading requirements:

7

"(a) A person may seek relief under the protection from stalking act by filing a verified petition with any district judge or clerk of the court. A verified petition must allege facts sufficient to show the following:

(1) The name of the stalking victim;

(2) the name of the defendant;

(3) the dates on which the alleged stalking behavior occurred; and

(4) the acts committed by the defendant that are alleged to constitute stalking."

K.S.A. 2015 Supp. 60-31a04.

Stalking is defined as "an intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 60-31a02(a). And harassment is defined as "a knowing and intentional course of conduct directed at a specific person that alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 60-31a02(b).

Our PFA and PFS statutes have different elements and require different proof. The issuance of a PFS order without a PFS petition being filed and without Daniel being served with a PFS petition as required by K.S.A. 2015 Supp. 60-31a04(d) violated Daniel's due process rights. The district court did not have the authority to convert Tammy's PFA petition into a PFS order. Daniel was not given the opportunity to defend himself after first receiving notice of a PFS petition.

Because of this conclusion, Daniel's claims that there was insufficient evidence to support the PFS order and that the district court's order requiring him to return Tammy's personal property are moot.

Accordingly, we affirm the district court's rulings with respect to Tammy's automobile, vacate the district court's PFS order, and remand for further proceedings on Tammy's second contempt citation and any other judgment enforcing actions with respect to her successful quiet title action.

8